No. 24-1714

# In the United States Court of Appeals for the Federal Circuit

———————

TRANSGENDER AMERICAN VETERANS
ASSOCIATION,

*Petitioner,*

v.

SECRETARY OF VETERANS AFFAIRS,

*Respondent.*

———————

Appeal of denial of petition for rulemaking by the
Department of Veterans Affairs

———————

## REPLY BRIEF FOR PETITIONER

———————

Michael J. Wishnie
VETERANS LEGAL SERVICES
 CLINIC
JEROME N. FRANK LEGAL
 SERVICES ORGANIZATION
YALE LAW SCHOOL
P.O. Box 209090
New Haven, CT 06520-9090
(203) 432-4800
michael.wishnie@ylsclinics.org
*Counsel for Petitioner*

## CERTIFICATE OF INTEREST

Counsel for Petitioners, the Transgender American Veterans Association, certified the following:

1.      The full name of every party or amicus represented in this appeal is:

The Transgender American Veterans Association.

2.      The names of the real parties in interest represented in this appeal are:

Not applicable.

3.      The names of all parent corporations and any publicly held companies that own 10 percent of the party represented are:

None.

4.      The names of all law firms and the partners or associates that are expected to appear in this appeal for Petitioners are:

The Jerome N. Frank Legal Services Organization; Michael J. Wishnie, supervising attorney; John Baisley, Natalie Geismar, and Romina Lilollari, law student interns.

5.      The following law firms and counsel formerly appeared in the district court in prior phases of the case:

None.

/s/ Michael J. Wishnie

October 22, 2024                                    Michael J. Wishnie

## <u>TABLE OF CONTENTS</u>

**CERTIFICATE OF INTEREST** ............................................................. ii

**TABLE OF AUTHORITIES** ............................................................. iv

**INTRODUCTION** ............................................................................ 1

**ARGUMENT** .................................................................................. 4

    I.    The Secretary's denial contravenes the clear command of Section 1710. ...... 4

    II.   The Secretary's denial is an abuse of discretion. ....................................... 12

       A.   Implementing one law does not relieve VA of its duty to follow another. 12

       B.   Denying the rulemaking petition is arbitrary given the Secretary's decision to extend coverage to other medically necessary procedures. ......................... 16

       C.   The Secretary has no discretion to violate constitutional and statutory nondiscrimination mandates. ........................................................................ 20

    III.   The possibility of individual as-applied challenges does not immunize the Secretary from judicial review of unlawful regulatory decisions. ...................... 26

    IV.   This Court should direct the Secretary to fulfill his statutory duty. ......... 28

**CONCLUSION** ............................................................................. 29

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ala. Power Co. v. Castle*,
   636 F.2d 323 (D.C. Cir. 1979) ................................................................. 13

*Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade*,
   412 U.S. 800 (1973) ............................................................................. 17

*Barrett v. Principi*,
   363 F.3d 1316 (Fed. Cir. 2004) .............................................................. 11

*Bilingual Bicultural Coal. on Mass Media, Inc. v. FCC*,
   595 F.2d 621 (D.C. Cir. 1978) ............................................................... 21

*Boone v. Lightner*,
   319 U.S. 561 (1943) ............................................................................. 11

*Bostock v. Clayton Cnty.*,
   590 U.S. 644 (2020) ........................................................................ 17, 25

*Boyden v. Conlin*,
   341 F. Supp. 3d 979 (W.D. Wis. 2018) .................................................... 25

*Brandt ex rel. Brandt v. Rutledge*,
   47 F.4th 661 (8th Cir. 2022) .................................................................. 22

*Brown v. Gardner*,
   513 U.S. 115 (1994) ............................................................................. 11

*Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*,
   403 F.3d 771 (D.C. Cir. 2005) ............................................................... 19

*Craig v. Boren*,
   429 U.S. 190 (1976) ............................................................................. 24

*Dep't Homeland Sec. v. MacLean*,
   574 U.S. 383 (2015) .............................................................................. 9

*Dep't of Com. v. New York*,
   588 U.S. 752 (2019) ............................................................................. 15

*Fletcher v. Alaska*,
   443 F. Supp. 3d 1024 (D. Alaska 2020) ................................................... 23

*Henderson ex rel. Henderson v. Shinseki*,
   562 U.S. 428 (2011) ............................................................................. 11

*Hyatt v. U.S. Pat. & Trademark Off.*,
  904 F.3d 1361 (Fed. Cir. 2018) ............................................................ 4

*In re Transgender Am. Veterans Ass'n,*
  No. 24-108 (Fed. Cir. filed Jan. 25, 2024)...................................... 28

*Kadel v. Fowell,*
  100 F.4th 122 (4th Cir. 2024) ...................................................... 21, 25

*Kavanaugh v. Peake,*
  273 F. App'x 937 (Fed. Cir. 2008) ................................................. 5, 9

*Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach,*
  523 U.S. 26 (1998) ................................................................................ 7

*Loper-Bright Enters. v. Raimondo,*
  144 S. Ct. 2244 (2024)......................................................................... 5

*Martin v. O'Rourke,*
  891 F.3d 1338 (Fed. Cir. 2017) ...................................................... 27

*Massachusetts v. EPA,*
  549 U.S. 535 (2007) .............................................................. 4, 6, 7, 8

*McAfee v. FDA,*
  36 F.4th 272 (D.C. Cir. 2022)......................................................... 21

*Mem'l Hosp. v. Maricopa Cnty.,*
  415 U.S. 250 (1974) ......................................................................... 24

*Military-Veterans Advoc. Inc. v. Sec'y of Veterans Affs.,*
  38 F.4th 154 (Fed. Cir. 2022) .................................................. 2, 5, 10

*Monk v. Wilkie,*
  978 F.3d 1273 (Fed. Cir. 2020) ...................................................... 27

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.,*
  463 U.S. 29 (1983) ........................................................................... 15

*Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.,*
  760 F.3d 151 (2d Cir. 2014) .............................................................. 7

*Roby v. McDonough,*
  No. 2020-1088, 2021 WL 3378834 (Fed. Cir. Aug. 4, 2021) ........ 11

*Rudisill v. McDonough,*
  601 U.S. 294 (2024) ......................................................................... 11

*Serv. Women's Action Network v. Sec'y of Veterans Affs.,*
  815 F.3d 1369 (Fed. Cir. 2016) ...................................................... 20

*SKF USA Inc. v. United States,*
263 F.3d 1369 (Fed. Cir. 2001) ........................................ 17

*Star Fruits S.N.C. v. United States,*
393 F.3d 1277 (Fed. Cir. 2005) .................................. 12, 14

*Telecomms. Rsch. & Action Ctr. v. FCC,*
750 F.2d 70 (D.C. Cir. 1984) ...................................... 7, 28

*United States v. Skrmetti,*
144 S. Ct. 2679 (2024) ................................................ 22

*United States v. Virginia,*
518 U.S. 515 (1996) .................................................... 24

*Utility Air Regul. Grp. v. EPA,*
573 U.S. 302 (2014) .................................................... 13

*WildEarth Guardians v. EPA,*
751 F.3d 649 (D.C. Cir. 2014) ...................................... 21

## Statutes

38 U.S.C. § 1710 ................................................... passim
38 U.S.C. § 502 .................................................... 26, 28
38 U.S.C. § 7292(a) ...................................................... 26
38 U.S.C.A. § 1116 (2021) (amended 2022) ............................... 10
42 U.S.C. § 18116 ..................................................... 1, 25
5 U.S.C. § 706(2)(A) ....................................................... 4
H.B. 786 (N.C. 2023) ...................................................... 18
S.B. 250, 59th Leg., 1st Sess. (Okla. 2023) ............................... 18
Sergeant First Class Heath Robinson Honoring our Promise to Address
Comprehensive Toxics Act of 2022, Pub. L. No. 117-168, 136 Stat. 1759 (Aug.
10, 2022) ............................................................... 3
Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-
55, 131 Stat. 1105 (2017) ............................................... 26

## Other Authorities

87 Fed. Reg. 55287 (Sept. 9, 2022) ..................................... 16
89 Fed. Reg. 15451 (Mar. 4, 2024) ...................................... 16
Brief for the Petitioner, 2024 WL 4003790, *United States v. Skrmetti,* 144 S. Ct.
2679 (No. 23-477) (2024) ............................................... 22

Corrected Br. *Amici Curiae* Am. Acad. Family Physicians et al. Supp. Pet'r and
Reversal, Sept. 3, 2024, ECF No. 61 ................................................................. 9

Corrected Br. Former Gens., Admirals, Surgeons Gen. as *Amici Curiae* Supp. Pet'r
and Grant Pet. Rev., Aug. 5, 2024, ECF No. 28 .............................................. 10

H.R. Rep. No. 104-690 (1996) ............................................................... 5, 10

Maham Javaid, *New State Bills Restrict Transgender Health Care—For Adults*,
WASH. POST (Mar. 1, 2023),
https://www.washingtonpost.com/nation/2023/02/28/anti-trans-bills-gender-
affirming-care-adults ............................................................................... 18

*Medicaid Coverage of Transgender-Related Health Care*, MOVEMENT
ADVANCEMENT PROJECT, https://www.lgbtmap.org/equality-maps/medicaid.... 18

*National Center for Veterans Analysis and Statistics*, U.S. DEP'T VETERANS AFFS.
(2020), https://www.va.gov/vetdata/veteran_population.asp ........................... 18

Orion Rummler, *Health Care for Transgender Adults Remains Legal, But States
Are Quietly Trying to Limit Access*, 19TH NEWS (Oct. 3, 2022),
https://19thnews.org/2022/10/transgender-healthcare-adults-limit-restrict........ 18

Petition for Writ of Certiorari, 2023 WL 7327440, *United States v. Skrmetti*, 144 S.
Ct. 2679 (No. 23-477) (2024) ................................................................... 3, 22

Petition for Writ of Mandamus to the Department of Veterans Affairs, *In re
Transgender Am. Veterans Ass'n*, No. 24-108 (Fed. Cir. filed Jan. 25, 2024),
ECF No. 2 ............................................................................................. 7

## **INTRODUCTION**

Secretary of Veterans Affairs Denis McDonough (the "Secretary") knows that his refusal to offer lifesaving healthcare to transgender veterans is wrong. He has acknowledged the "need" for gender-confirmation surgery—an essential treatment for gender dysphoria—among transgender veterans. And for over three years, he has promised to end this exclusion. Yet when asked by a group of transgender veterans to make good on his word, the Secretary refused, leaving them locked in an eight-year legal battle against a discriminatory policy. Insultingly, he recommends transgender veterans spend years more pursuing a different route, one by one, to try to obtain the vital care the Secretary concedes they need. Meanwhile, the Secretary rests his denial of this rulemaking petition on speculative concerns about the implementation of an unrelated statute. But his rationale defies the clear command of 38 U.S.C. § 1710 and maintains an unconstitutional and discriminatory policy.

In its principal brief, Petitioner Transgender American Veterans Association ("TAVA") demonstrated that Secretary McDonough violated the Administrative Procedure Act ("APA"), Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116 ("Section 1557"), and the U.S. Constitution when he denied TAVA's petition for rulemaking and maintained the U.S. Department of Veterans Affairs' ("VA") ban on gender-confirmation surgery. In his response, the Secretary concedes that gender-confirmation surgery is "needed" care under 38

U.S.C. § 1710 ("Section 1710"), at least for "certain veterans." *See* Resp't's Br. 24. Tellingly, VA nowhere disputes that VA's gender-confirmation surgery ban is inconsistent with Section 1557 and the equal protection component of the Fifth Amendment's Due Process Clause. Nonetheless, he tells transgender veterans that they just have to wait. Neither in his brief, nor in his letter denying TAVA's petition for rulemaking, does the Secretary even gesture to a timeline to comply with the law.

The Secretary's words are cold comfort to TAVA and the tens of thousands of transgender veterans who have risked their lives and welfare for the U.S. military. They remain locked out of lifesaving care—and twenty times more likely than other veterans to experience "suicide-related events" in its absence. Pet'r's Br. 7.

The Secretary's treatment of transgender veterans is illegal. VA is required by statute to provide medically necessary gender-confirmation surgery. The Secretary's choice to indefinitely delay providing this care is thus "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Military-Veterans Advoc. Inc. v. Sec'y of Veterans Affs.*, 38 F.4th 154, 160 (Fed. Cir. 2022) (citations omitted). It is based on (1) a legal fiction in which he may ignore Section 1710's clear statutory command; and (2) a singular justification that is illogical and pretextual—namely, speculative difficulties posed by implementing the Sergeant First Class Heath Robinson Honoring our Promise to Address Comprehensive

Toxics Act of 2022, Pub. L. No. 117-168, 136 Stat. 1759 (Aug. 10, 2022) ("PACT Act").

Further, the Secretary's denial amounts to facial sex discrimination that triggers—and fails—heightened review under the Constitution and violates Section 1557 of the Affordable Care Act. Through his denial, the Secretary refuses to cover surgical procedures when they are needed to treat gender dysphoria—a condition specific to transgender people—while covering them for other purposes. That is a facial sex-based distinction that warrants heightened scrutiny under the Fifth Amendment and violates Section 1557. The denial also relies on impermissible sex-stereotyping and discriminates against members of a quasi-suspect class, further necessitating heightened review. The Secretary's arguments to the contrary are confounding given that the U.S. government recently urged the Supreme Court to recognize that categorical denials of gender-affirming care deserve heightened scrutiny. *See* Petition for Writ of Certiorari, 2023 WL 7327440, at *19, *25, *United States v. Skrmetti*, 144 S. Ct. 2679 (No. 23-477) (2024).

TAVA respectfully asks this Court to affirm that agencies must obey their substantive statutes and rectify discrimination without unreasonable, arbitrary delay. Though any Secretary must balance competing agency priorities, the VA abused its discretion when it relied on the implementation of one statute as an excuse to shirk its mandatory duties under Section 1710, the APA, Section 1557, and the

3

Constitution. This Court should set aside the Secretary's denial and end a years-long exclusion that violates the rights of transgender veterans and endangers their health and safety.

## **ARGUMENT**

### I.    **The Secretary's denial contravenes the clear command of Section 1710.**

The Secretary's denial is "not in accordance with law," 5 U.S.C. § 706(2)(A), because it ignores the unambiguous text of Section 1710. The "contrary to law" inquiry in the review of rulemaking denials is guided by the normal methods of statutory interpretation. *See, e.g.*, *Hyatt v. U.S. Pat. & Trademark Off.*, 904 F.3d 1361, 1374-75 (Fed. Cir. 2018). Here, the plain text of Section 1710 gives the Secretary discretion to decide whether care is "needed," 38 U.S.C. § 1710(a)(1)-(2), and the Secretary "broadly agrees as to the necessity of gender affirming surgery for certain veterans." Resp't's Br. 24. Once the Secretary deems care necessary, the statute requires him to provide it. 38 U.S.C. § 1710(a). Instead, the Secretary has stubbornly refused to do so, flouting Congress's unambiguous demand and relying on justifications beyond its text. *See Massachusetts v. EPA*, 549 U.S. 497, 535 (2007) (when denying a petition for rulemaking, an agency "must ground its reasons for action or inaction in the statute").

By the clear text of Section 1710, the Secretary does not enjoy uncabined discretion to delay, or outright deny, the provision of medically necessary care.[1] Still, he maintains that whether to initiate rulemaking related to gender-confirmation surgery is a "policy" matter committed to his "discretion." Resp't's Br. 15 (citing *Military-Veterans*, 38 F.4th at 160). But there is no policy choice to make here: the statute dictates that the Secretary "*shall*" furnish "hospital care and medical services which the Secretary determines to be *needed*" to veterans with service-connected disabilities rated at 50 percent or more, alongside several other classes of veterans.[2] 38 U.S.C. § 1710(a)(1)-(2) (emphasis added); *see also Kavanaugh v. Peake*, 273 F. App'x 937, 939 (Fed. Cir. 2008) ("*Unlike* § 1710 (which provides that the Secretary "shall" furnish care in designated circumstances), § 1703 relies on the *discretion* of the Secretary . . . ." (emphasis added)).

---

[1] The text of Section 1710 is unambiguous. To the extent that the Secretary finds ambiguity, this Court is not obligated to defer to his construction. *Loper-Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).

[2] The requirement that the Secretary provide these services "shall be effective in any fiscal year only to the extent and in the amount provided in advance in appropriations Acts for such purposes." 38 U.S.C. § 1710(a)(4). This is the sole caveat Congress attached to the provision of medically necessary care to veterans described in *id.* § 1710(a)(1)-(2). *See also* H.R. Rep. No. 104-690, at 5 (1996) (explaining that, "as amended, section 1710(a)(1) would qualify the Secretary's *obligation* to provide care" by conditioning it on the availability of appropriations and stating no other qualification (emphasis added)). The Secretary nowhere claims that a lack of appropriations constrains his ability to provide gender-confirmation surgery.

The Secretary concedes that gender-confirmation surgery is "needed," at least for "certain veterans," so his mandate is clear. *See* Resp't's Br. 24 ("[T]he agency broadly agrees as to the necessity of gender affirming surgery for certain veterans."); *id.* at 25 ("The Secretary's denial . . . was not premised on a contrary view as to the need or effectiveness of gender affirming surgical interventions for certain veterans."); *id.* at 13 ("Nor did the Secretary question the need or effectiveness of gender affirming surgery for certain veterans."); *see also* Pet'r's Br. 17 (cataloguing public and private remarks by Secretary acknowledging that gender-confirmation surgery is necessary care).

Nonetheless, the Secretary claims that *he* has full discretion to decide "whether, how, and at what time" to amend VA's gender-confirmation surgery ban. Resp't's Br. 16. This conclusion rests on reasoning "divorced from the statutory text." *Massachusetts*, 549 U.S. at 532. To prove this "discretion" exists, the Secretary highlights that Congress directed him to provide hospital care and medical services "*which [he] determines to be needed*" and cites several provisions of Section 1710. Resp't's Br. 16. This statutory language reveals, however, that the Secretary's discretion lies in deciding whether a form of care is "needed" in the first place, not in "whether, how, and at what time" to provide necessary care. The Secretary cites no statute or other legal authority that supports his claim that, once he decides certain medical care is "needed," he retains total discretion regarding its provision. To the

contrary, once the determination of need is made, his discretion ends, and the operative language from Section 1710 becomes "shall."[3] *See Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) ("[T]he mandatory 'shall' . . . normally creates an obligation impervious to . . . discretion."); *see also Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 760 F.3d 151, 168 (2d Cir. 2014) (where statute said that "[t]he [FDA] Secretary *shall* . . . issue an order withdrawing approval" of a drug found unsafe, the agency "[was] not accorded discretion to adopt a different remedy" (emphasis added)).

The Supreme Court faced a similar situation in *Massachusetts v. EPA*. There, the U.S. Environmental Protection Agency ("EPA") denied a petition for rulemaking to regulate greenhouse gases from motor vehicles under the Clean Air Act ("CAA"). 549 U.S. at 511. The CAA dictated that EPA "shall by regulation prescribe . . . standards" for any air pollutant which "in [the EPA Administrator's] judgment" contributed to climate change. *Id.* at 506. The EPA refused, explaining, *inter alia*, that establishing greenhouse gas standards would conflict with other administration

---

[3] Doubtless, agencies have competing priorities and cannot act on all statutory commands immediately. But the Secretary's delay of over three years is unreasonable. *Cf. Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") (setting forth a six-factor test for unreasonable agency delay); Petition for Writ of Mandamus to the Department of Veterans Affairs 14-24, *In re Transgender Am. Veterans Ass'n*, No. 24-108 (Fed. Cir. filed Jan. 25, 2024), ECF No. 2 (explaining why VA's delay in acting on TAVA's petition was unreasonable under the *TRAC* test given that the Secretary acknowledged medical necessity of gender-confirmation surgery as early as June 2021).

priorities. *Id.* at 513-14. The Court concluded that, under the statute's clear terms, EPA could avoid regulating only if (1) the Administrator determined that greenhouse gases did not contribute to climate change; or (2) the agency provided "some reasonable explanation" for why the Administrator could not or would not exercise the discretion to decide whether they did. *Id.* at 533. But if the Administrator did form a judgment about endangerment, the Supreme Court was clear: the statute compelled the agency to act. *Id.* at 533-34.

Here, the text of Section 1710 similarly constrains agency discretion. At least for the classes of veterans described in 38 U.S.C. § 1710(a)(1)-(2), the Secretary can avoid action *only* if he (1) determines that a given type of medical care is not "needed" within the meaning of the statute or (2) provides a reasoned explanation as to why he cannot or will not decide whether it is.[4] That VA "would prefer not to regulate" in the way TAVA seeks "because of some residual uncertainty" about the impact of the PACT Act is "irrelevant." *Massachusetts*, 549 U.S. at 534. In light of the Secretary's concession that gender-confirmation surgery is needed medical care for at least some transgender veterans—a position widely held in the medical community, *see, e.g.*, Corrected Br. *Amici Curiae* Am. Acad. Family Physicians et

---

[4] As explained above, the Secretary has conceded that this care is "needed." But even if he had not, the denial of TAVA's petition should have articulated reasons why he could not or would not make such a determination, not reasons for refusing to amend the medical benefits package. *See Massachusetts*, 549 U.S. at 533.

al. Supp. Pet'r and Reversal 15-19, Sept. 3, 2024, ECF No. 61—his refusal to provide such care is a dereliction of duty in violation of Section 1710.

The structure of Section 1710 is also instructive. The statute differentiates between veterans who, for example, are rated 50 percent (or more) disabled, and other veterans. As noted above, for the former group, the Secretary "shall" provide medical care he determines is "needed." For the latter group, he "*may*" provide said care "to the extent resources and facilities are available . . . ." *Compare* 38 U.S.C. § 1710(a)(1)-(2) (using "shall") *with id.* § 1710(a)(3) (using "may").

The government attempts to muddy this distinction, lumping the textual provisions together in a citation and parenthetically describing them as "similar." Resp't's Br. 16. But a faithful reading of the statute refutes VA's claim. Congress knew how to afford the Secretary discretion to consider resource constraints and, in several places throughout Section 1710, chose to do so.[5] *See Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391-92 (2015) ("Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another."); *Kavanaugh*, 273 F. App'x at 939. A reading of Section 1710 that allows the Secretary to stall medically necessary care indefinitely for classes of veterans that fit

---

[5] The statute is replete with examples of Congress alternating between permissive and mandatory language to guide the Secretary's behavior. *See, e.g.*, 38 U.S.C. § 1710(a)(3), (5), (b)(1), (c), (e)(6)(B)(i), (f)(1) (using "may"); *id* § 1710(a)(1), (a)(2), (e)(5), (e)(6), (e)(6)(B)(ii) (using "shall"); *id.* § 1710(a)(2) (using both).

within its mandatory language does violence to the statutory text, as well as to its purpose and history. *See, e.g.*, Corrected Br. Former Gens., Admirals, Surgeons Gen. as *Amici Curiae* Supp. Pet'r and Grant Pet. Rev. 11-12, Aug. 5, 2024, ECF No. 28 (detailing Congress's expansion of healthcare coverage for veterans under Section 1710 and its adoption of a "need for care" test, under which "medical judgment rather than legal criteria will determine when care will be provided and the level at which that care will be furnished" (citing H.R. Rep. No. 104-690, at 4 (1996))).

The Secretary's brief relies on *Military-Veterans Advocacy Inc. v. Secretary of Veterans Affairs*, but the clarity of Section 1710's command easily distinguishes TAVA's case. In *Military-Veterans*, the petitioner asked VA to extend the reach of the Agent Orange Act to veterans allegedly exposed to herbicides in Guam or Johnston Island. 38 F.4th at 158. The Agent Orange Act, however, specifically granted veterans *who served in Vietnam* a presumption of exposure to herbicides and service-connection for associated diseases. *Id.* at 161; 38 U.S.C.A. § 1116(a)(1), (f) (2021) (amended 2022). This Court upheld VA's refusal to grant Guam and Johnston Island veterans a similar presumption, noting that the Act did not "require" the Secretary to extend presumptions to "anyone other than" those who served in Vietnam. *Military-Veterans*, 38 F.4th at 161. By contrast, TAVA does not ask the Secretary to extend the reach of Section 1710's care mandate beyond the limits of

the text as it stands. It simply asks him to provide care that he acknowledges is "needed" to eligible veterans, as Congress required.

Finally, to the extent this Court concludes that the statute is ambiguous as to *when* the Secretary's duty of care arises, the Court must resolve that ambiguity in favor of the veteran. The pro-veteran canon mandates that "interpretive doubt . . . be resolved in the veteran's favor." *Brown v. Gardner*, 513 U.S. 115, 117-18 (1994); *see also Roby v. McDonough*, No. 2020-1088, 2021 WL 3378834, at *8 (Fed. Cir. Aug. 4, 2021) (directing the court below to "take into account the pro-veteran canon of construction"); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 441 (2011) ("[P]rovisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." (citations omitted)); *Rudisill v. McDonough*, 601 U.S. 294, 314 (2024) ("If the statute were ambiguous, the pro-veteran canon would favor [the veteran]."). The canon reflects the normative principle that we must protect and reward those who "drop their own affairs to take up the burdens of the nation." *Boone v. Lightner*, 319 U.S. 561, 575 (1943); *see also Barrett v. Principi*, 363 F.3d 1316, 1320 (Fed. Cir. 2004) ("[T]he veterans benefit system is designed to award entitlements to a special class of citizens, those who risked harm to serve and defend their country." (internal quotation omitted)). If the Court reads Section 1710 as ambiguous as to the timeline by which the Secretary

11

"shall" furnish gender-confirmation surgery, it should resolve the ambiguity to favor veterans who seek—and deserve—prompt access to lifesaving care.

The Secretary's belief that "whether, how, and at what time" to take action "are matters firmly committed to [his] discretion" rests on an incorrect view of his statutory powers, and his consequent denial of TAVA's rulemaking petition is the product of legal error. Resp't's Br. 16. Basic principles of statutory interpretation confirm that this Court should compel the Secretary to initiate rulemaking; alternatively, it should set aside VA's denial as contrary to law and remand for further proceedings.

## II. The Secretary's denial is an abuse of discretion.

VA's denial of TAVA's rulemaking petition is unreasonable and therefore an abuse of discretion. Specifically, Secretary McDonough's justification for the denial is not based on the record, does not treat like situations alike, and violates statutory and constitutional nondiscrimination mandates.

### A. Implementing one law does not relieve VA of its duty to follow another.

VA's reliance on its PACT Act obligations to justify its refusal to provide medically necessary care to transgender veterans is unreasonable and thus an abuse of discretion. *See Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005) (abuse of discretion occurs when an agency's decision "represents an unreasonable judgement in weighing relevant factors"). While the Secretary denies

that VA is abandoning its rulemaking efforts because it is "'too busy' implementing the PACT Act," Resp't's Br. 13, he invokes this reasoning countless times in his brief. *See, e.g.*, *id.* at 9 (recognizing "the Secretary has called for further review of the proposed rule in light of the PACT Act's coverage expansion"); *id.* at 20 (arguing agency was not ready to initiate rulemaking "given the need for additional analysis regarding the effects of the PACT Act's expedited implementation on the draft proposed rule"); *id.* at 25 (arguing that denial rested on timing disagreement, "particularly in light of the ongoing uncertainty engendered by the expedited implementation of the PACT Act's expansion in coverage").

The Secretary's retreat behind the PACT Act is unavailing because an agency's obligation to implement one statute cannot justify the derogation of its duty to carry out another. Unsurprisingly, courts have held that agencies cannot shirk their legal duties because of resource constraints. *See Utility Air Regul. Grp. v. EPA*, 573 U.S. 302, 327 (2014) (recognizing that "an agency may adopt policies to prioritize its expenditures *within the bounds established by Congress*" (emphasis in original)); *see also Ala. Power Co. v. Castle*, 636 F.2d 323, 357 (D.C. Cir. 1979) ("But there exists no general administrative power to create exemptions to statutory requirements based upon the agency's perceptions of costs and benefits."). Here, however, the Secretary argues that an agency may deny a petition for rulemaking due to its limited resources and numerous statutory requirements. *See* Resp't's Br.

20 n.1. But this argument holds no weight, given that VA is statutorily required to provide medically necessary care, *see supra* Section I, in a manner that does not discriminate on the basis of sex, *see infra* Section II.C.

Even if courts recognized resource constraints as a valid basis for agencies to disregard the law, that justification is not available here. VA *already provides* the surgeries at issue here when they are necessary to treat conditions *other* than gender dysphoria. *See* Pet'r's Br. 19-21. And VA's own economic impact analysis did not conclude that the provision of gender-affirming surgery would be cost prohibitive. *See* Appx089-098. Although VA's denial of TAVA's petition asserted that the agency would need to revisit its economic analysis in light of the PACT Act, *see* Appx001, this statement merely gestured at uncertainty about cost and administrative burden. The Secretary has cited no evidence in the administrative record demonstrating that providing gender-confirmation surgeries to treat gender dysphoria would exceed VA's resources. *Cf. Star Fruits*, 393 F.3d at 1281 (agency abuses its discretion when its decision is based "on factual findings that are not supported by substantial evidence").

Nor does Secretary McDonough's desire to collect more data preclude VA from granting the petition and initiating the rulemaking process. In fact, the Secretary's own reasoning illustrates that granting TAVA's petition could supply the data he desires. While straining to justify VA's decision to provide abortions, but

not gender-affirming surgery, Secretary McDonough argues that, because VA issued an abortion-related interim rule that "went into effect immediately," the agency had enough "reliable data regarding the rule's effect on the provision of care" to finalize it eighteen months later. Resp't's Br. 23. Following a similar procedure can likewise provide the Secretary with the data he says he seeks about the potential effects of TAVA's proposed rule. VA's failure to consider a method of data collection that, by its own admission, was effective in an analogous care expansion warrants court intervention. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43, 50-51 (1983) (recognizing that, while an agency is not required "to consider all policy alternatives" when making a decision, it cannot "entirely fail[] to consider an important aspect of the problem").[6]

To avoid rendering his denial mere pretext, Secretary McDonough must provide a concrete reason why the agency cannot both implement the PACT Act and expand care in this context. *See Dep't of Com. v. New York*, 588 U.S. 752, 780-84 (2019) (setting aside agency's decision on pretextual grounds where agency head "had made his mind up . . . 'well before'" taking action and "did so for reasons

---

[6] Relatedly, VA also failed to consider whether it could phase in coverage for gender-confirmation surgeries while fulfilling the agency's PACT Act duties. As stated above, the Secretary himself recognizes the need for this lifesaving care. *See supra* at 5. Given this critical understanding, VA should have considered ways to roll out care on a workable timeline consistent with the agency's PACT Act obligations, rather than deny the petition outright.

unknown but unrelated" to the stated rationale). Responding to TAVA's allegations of pretext, the Secretary asserts that the agency is not altogether "abandoning" its efforts but is merely "not ready at this time" to initiate rulemaking. Resp't's Br. 20-21. But this argument does nothing to dispel suspicions of pretext, especially given the many years that have passed since this litigation began. Agreeing with TAVA regarding the medical necessity of gender-confirmation surgery, while failing to deliver it, does not make the Secretary's decision any less pretextual. And the Secretary's decision to drag his feet while extending coverage to other forms of care further highlights his unreasonableness. That the Secretary sought out data collection on February 22, 2024—the same day he denied TAVA's rulemaking petition, one month after TAVA had filed its mandamus petition, and nearly three years after VA publicly promised to cover gender-confirmation surgery—casts further doubt on the sincerity of his defense. *See* Appx001-002; *see also* Appx323-326.

### B. Denying the rulemaking petition is arbitrary given the Secretary's decision to extend coverage to other medically necessary procedures.

VA's denial is arbitrary because the agency already extended coverage for other medically necessary procedures while meeting its PACT Act obligations. In September 2022 (after the PACT Act was passed), VA published an interim final rule extending coverage to medically necessary abortion care, 87 Fed. Reg. 55287 (Sept. 9, 2022), which it finalized in March 2024 as PACT Act implementation was well underway. 89 Fed. Reg. 15451 (Mar. 4, 2024). An agency has a "duty to explain

16

its departure from prior norms" with reasoning that is "clearly set forth so that the reviewing court may understand the basis of the agency's action and . . . judge [its] consistency." *Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 808 (1973); *see also SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) ("[A]gency action is arbitrary when the agency offer[s] insufficient reasons for treating similar situations differently,"). The Secretary justifies this separate rule as uniquely necessary given "the rapidly changing legal landscape," which has caused some veterans to lose access to abortions in their communities. Resp't's Br. 23. TAVA agrees that ensuring access to abortion care is vital. But those same considerations apply here.[7]

Veterans who rely on government healthcare are similarly "losing access" to gender-affirming care because of the "rapidly changing legal landscape." *Id.* For example, ten states—housing nearly one-third of the nation's veteran population—have expressly banned Medicaid coverage for gender-affirming care. *See Medicaid Coverage of Transgender-Related Health Care*, MOVEMENT ADVANCEMENT

---

[7] In addition to the legislative shifts described *infra*, the Supreme Court has also recently shifted the legal landscape of transgender rights. While the Court's "landmark decision in *Dobbs*" motivated VA to expand veterans' access to reproductive healthcare, Resp't's Br. 23, another landmark decision, *Bostock v. Clayton County*, 590 U.S. 644 (2020), now prohibits entities subject to federal antidiscrimination laws—such as the VA—from engaging in discrimination based on transgender status. *Id.* at 660; *see also infra* Section II.C.2 (explaining how the Secretary's denial violates Section 1557).

PROJECT, https://www.lgbtmap.org/equality-maps/medicaid (last visited Oct. 21, 2024) (discussing Medicaid coverage bans in Arizona, Florida, Idaho, Kentucky, Missouri, Nebraska, Ohio, South Carolina, Tennessee, and Texas); *see also National Center for Veterans Analysis and Statistics*, U.S. DEP'T VETERANS AFFS. (2020), https://www.va.gov/vetdata/veteran_population.asp. Three of these bans—enacted in Idaho, Florida, and South Carolina—were passed within the last *two years*. Other states are threatening to pass similarly restrictive bans or are quietly limiting coverage of such care through informal channels. *See, e.g.*, S.B. 250, 59th Leg., 1st Sess. (Okla. 2023); H.B. 786 (N.C. 2023); Orion Rummler, *Health Care for Transgender Adults Remains Legal, But States Are Quietly Trying to Limit Access*, 19TH NEWS (Oct. 3, 2022), https://19thnews.org/2022/10/transgender-healthcare-adults-limit-restrict (discussing states' non-legislative attempts to limit gender-affirming care, such as instituting waiting periods for transgender adults seeking hormone therapy or surgeries); Maham Javaid, *New State Bills Restrict Transgender Health Care—For Adults*, WASH. POST (Mar. 1, 2023), https://www.washingtonpost.com/nation/2023/02/28/anti-trans-bills-gender-affirming-care-adults (discussing growing number of bills targeting access to gender-affirming care for adults).

As a result, many veterans who previously had access to gender-confirmation surgery through Medicaid now do not.[8] TAVA even provided a devastating example of one Texas-based veteran who took matters into her own hands when her insurance would not cover gender-confirmation surgery—and nearly died as a result. *See* Appx430-431.

VA's extension of abortion care shows that the PACT Act is not an automatic barrier to the provision of vital care not previously offered by VA, since implementation of the PACT Act was well underway—and accelerated—as the VA issued its interim and final abortion rules. But the Secretary still hides behind the PACT Act, insisting he cannot cover gender-confirmation surgery at this time. By expanding coverage for abortion care but denying it for gender-confirmation surgeries, VA "applies different standards to similarly situated" issues. *Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 777 (D.C. Cir. 2005). Because the Secretary has "fail[ed] to support this disparate treatment with a reasoned explanation *and substantial evidence* in the record," his denial is arbitrary. *Id.* (emphasis added).

---

[8] Additionally, in the transition from active-duty service, veterans must forego access to gender-affirming surgery that was previously available to them. *See* Appx484-486 (reporting DOD spent around $15 million providing gender-affirming care, including surgical care, between January 2016 and May 2021).

### C. The Secretary has no discretion to violate constitutional and statutory nondiscrimination mandates.

In refusing to provide transgender veterans with gender-confirmation surgeries, the Secretary's denial of TAVA's rulemaking petition amounts to impermissible discrimination on the basis of sex and transgender status. Contrary to VA's arguments, TAVA does not allege that the denial flows from the Secretary's mere choice of language, nor from animus toward the transgender population. *See* Resp't's Br. 26-27. Rather, by declining to extend surgical care to transgender veterans to treat gender dysphoria while providing identical care to treat *other* conditions, the denial of TAVA's petition inescapably relied on sex, classified by sex and transgender status, and treated transgender veterans differently from their non-transgender counterparts. [9] The denial demands—and fails—intermediate scrutiny under the Constitution and violates Section 1557.

---

[9] The Secretary's denial itself is reviewable as unconstitutional discrimination, despite the Secretary's attempts to frame TAVA's arguments as applicable only to the "gender alterations exclusion" itself. Resp't's Br. 28. This Court has rejected the approach urged by the Secretary. In *Service Women's Action Network v. Secretary of Veterans Affairs*, as here, the plaintiff alleged that denial of its petition violated the equal protection component of the Fifth Amendment's Due Process Clause. 815 F.3d 1369, 1372, 1376 (Fed. Cir. 2016). This Court assessed the discrimination claim applied to the denial on the merits, rather than assuming any challenge would have to be to the policy the plaintiff sought to change through rulemaking. *Id.* at 1376-78. It should do so again here.

In any case, agencies may not deny rulemaking petitions so as to leave discriminatory, unconstitutional regulations untouched. Agency actions preserving the status quo still must abide by the law's antidiscrimination requirements. *See, e.g.,*

### 1. *The Secretary's denial fails intermediate scrutiny.*

The Secretary's denial of TAVA's rulemaking petition constitutes facial sex discrimination. The denial cannot be operationalized without sorting veterans on the basis of sex, since there is no other way to know what counts as "gender affirming surgery." *See* Appx001-002. Veterans cannot be diagnosed with gender dysphoria—the only condition for which gender-confirmation surgery is medically indicated—without identifying as transgender, and they cannot identify as transgender without reference to their sex assigned at birth. *See Kadel v. Fowell*, 100 F.4th 122, 147 (4th Cir. 2024) (observing that the "incongruity between sex assigned at birth and gender identity" is "the very heart of transgender status"); *id.* ("gender dysphoria is so intimately related to transgender status as to be virtually indistinguishable from it"). It is thus misleading for the Secretary to describe his letter denying TAVA's petition as a mere "discuss[ion] [of] issues related to transgender veterans," *see* Resp't's Br. 27, when it memorializes a refusal of care that relies on sex discrimination.

The Secretary's denial demands heightened scrutiny because "[t]he biological sex of the . . . patient is the basis on which" it "distinguishes between those who may

---

*Bilingual Bicultural Coal. on Mass Media, Inc. v. FCC*, 595 F.2d 621, 633-34 (D.C. Cir. 1978) (rejecting agency renewal of existing license where agency failed to consider radio station's pattern of employment discrimination); *cf., e.g.*, *McAfee v. FDA*, 36 F.4th 272, 274 (D.C. Cir. 2022) (specifying "plain error of law" as reason to set aside agency denial of a rulemaking petition) (quoting *Nat'l Customs Brokers & Forwarders Ass'n of Am., Inc. v. United States*, 883 F.2d 93, 97 (D.C. Cir. 1989)); *WildEarth Guardians v. EPA*, 751 F.3d 649, 653 (D.C. Cir. 2014) (same).

receive certain types of medical care and those who may not." *Brandt ex rel. Brandt v. Rutledge*, 47 F.4th 661, 670 (8th Cir. 2022). The denial also warrants heightened scrutiny because it imposes impermissible sex-stereotyping and discriminates against members of a quasi-suspect class. *See* Pet'r's Br. 36-41.

The Secretary claims that heightened scrutiny does not apply here, which is confounding given the federal government's recent arguments before the Supreme Court in *United States v. Skrmetti*. There, the U.S. government represented that categorial denials of gender-affirming care, such as gender-confirmation surgery, require heightened scrutiny as both sex and transgender status discrimination. Petition for Writ of Certiorari, 2023 WL 7327440, at *19, *Skrmetti*, 144 S. Ct. 2679 (policy that "restricts care only for transgender individuals who seek to induce physiological effects inconsistent with their sex assigned at birth . . . is sex discrimination, because transgender status is inextricably bound up with sex" (cleaned up)); *id.* at * 25 (same policy "is also subject to heightened scrutiny because it expressly and exclusively targets transgender persons, who constitute at least a quasi-suspect class" (cleaned up)); *see also* Brief for the Petitioner, 2024 WL 4003790, at *19-*32, *Skrmetti*, 144 S. Ct. 2679 (U.S. cert. granted June 24, 2024) (same). The Secretary offers no explanation for why heightened scrutiny applies in *Skrmetti* but not here.

Instead, the Secretary mischaracterizes TAVA's argument as focusing exclusively on his word choice and insists that his decision was facially neutral and lacked animus. *See* Resp't's Br. 26-27. This misses the point. First, the denial letter's use of the terms "transgender" and "gender affirming surgery" does not, alone, give rise to intermediate scrutiny, *see* Resp't's Br. 27, and TAVA never argued that it does. Rather, heightened scrutiny is triggered because the letter denies coverage for surgeries on the basis of sex and transgender identity. Appx001-002.

Second, it does not matter that the Secretary "argues that no inference of a discriminatory motive can be drawn," because he "has adopted and relied upon a formal, facially discriminatory policy"—such as one where a plaintiff "is treated differently because of her natal sex." *Fletcher v. Alaska*, 443 F. Supp. 3d 1024, 1029-30 (D. Alaska 2020) (invalidating AlaskaCare's exclusion of "gender-transition related surgery"). In insisting that the facially neutral PACT Act excuse renders the denial compliant with sex discrimination law, *see* Resp't's Br. 26, the Secretary's response appears to misconstrue both TAVA's argument and constitutional doctrine. When, as here, the government acts in a way that facially classifies based on sex, the relevant inquiry under the Constitution is whether the justification for the classification is "exceedingly persuasive" and "serves important governmental objectives" through means "substantially related to the achievement thereof"—not whether the justification is based on animus or itself constitutes a sex classification.

23

*See United States v. Virginia*, 518 U.S. 515, 524 (1996). The facial neutrality of the Secretary's justification for denying TAVA's petition is thus irrelevant. What matters is whether his PACT Act rationale is an "exceedingly persuasive" justification. It is not.

In glossing over TAVA's constitutional arguments, the Secretary avoids addressing the doctrinal insufficiency of his position. As TAVA explained, *see* Pet'r's Br. 42-45—and to which the Secretary had no response, *see* Resp't's Br. 27 (sole use of word "scrutiny" in the entire brief)—the Secretary's concerns about the PACT Act's interaction with the provision of gender-confirmation surgery rest on constitutionally impermissible cost- and convenience-based rationales. The Secretary insists in his brief, as he did in his denial, that the PACT Act's implementation requires "additional analysis" on "'how, where, and at what cost' the agency provides healthcare, including gender affirming surgery." Resp't's Br. 12-13 (quoting Appx442). But a concern to "protect the public fisc" cannot justify "drawing an invidious distinction between classes of [the state's] citizens." *Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 263 (1974). Similarly, the Secretary's repeated invocation of logistics, such as his concern about additional travel or appeals processes, is an "administrative ease and convenience" argument of the kind that the Supreme Court has rejected for decades. *See Craig v. Boren*, 429 U.S. 190, 198 (1976) (collecting cases).

The Secretary is wrong to assert that TAVA has "no reason to question the decision to undertake further study before moving forward." Resp't's Br. 13. TAVA provided plenty of reasons—constitutionally justified ones. The Secretary elected not to address them.

### 2.  *The Secretary's denial violates Section 1557 of the ACA.*

The Secretary's denial also violates Section 1557 of the ACA, which prohibits sex discrimination in federally-funded or federally-administered healthcare programs. 42 U.S.C. § 18116(a). The Secretary's denial was not "facially neutral." Resp't's Br. 26-27. Rather, it constituted *per se* sex discrimination under both *Bostock*, 590 U.S. at 660, and sex-stereotyping case law. *See Boyden v. Conlin*, 341 F. Supp. 3d 979, 997 (W.D. Wis. 2018) (holding that an exclusion of services related to gender-affirming surgery constitutes sex discrimination based both on facial sex classification and sex-stereotyping rationales).

The denial of TAVA's petition is sex discrimination because VA declined to provide transgender-specific care, *see Kadel*, 100 F.4th at 147, in direct contravention of *Bostock*. *See also* Pet'r's Br. 48-49. Additionally, "by limiting the availability of medical transitioning, if not rendering it economically infeasible," the Secretary's denial "require[es] transgender individuals to maintain the physical characteristics of their natal sex." *Boyden*, 341 F. Supp. 3d at 997. This amounts to impermissible sex-stereotyping in violation of Section 1557.

**III.** **The possibility of individual as-applied challenges does not immunize the Secretary from judicial review of unlawful regulatory decisions.**

VA observes that individual veterans may appeal the gender alterations exclusion through the route laid out in the Veterans Judicial Review Act of 1988 ("VJRA"), 38 U.S.C. § 502. *See* Resp't's Br. 3. But, even if true, that does not distinguish this case from the many others in which this Court has evaluated VA's rulemaking or lack thereof. Congress did not leave it *to VA* to determine whether particular veterans should challenge unlawful VA rules via individual as-applied challenges or petitions for rulemaking. Instead, Congress afforded veterans both options and left it *to them* to decide how to obtain judicial review of unlawful VA policies. VA may not escape its statutory burden by noting alternative procedures.

First, Congress provided veterans with two statutory paths to judicial review: petitioning for rulemaking or pursuing an individual appeal to seek relief from an unlawful VA regulation. In the VJRA, Congress conferred jurisdiction on this Court to review the Secretary's denial of rulemaking petitions. 38 U.S.C. § 502. In the same statute, Congress also established judicial review for individual veterans denied VA benefits, *id.*, which it revised in 2017 to more fully provide for judicial review of denials of VA healthcare. 38 U.S.C. § 7292(a); Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, § 2, 131 Stat. 1105 (2017). While VA might wish that Congress limited veterans to the individual appeals process, or allowed the Secretary to determine which route to judicial review

a veteran must pursue, it did not. Instead, Congress created multiple paths to relief from which *veterans*, not VA, may choose.

Second, encouraging numerous individual appeals challenging VA's blanket exclusionary rule is inefficient and time consuming. VA argues that transgender veterans in need of gender-confirmation surgery should file individual claims to litigate coverage rather than challenge VA's policy collectively through this petition for rulemaking. *See* Resp't's Br. 14. But a typical challenge to a VA healthcare denial takes multiple years and significant resources to work its way up the appeal chain, let alone reach the point where a veteran could receive review of the policy at issue in this litigation.[10] *See Martin v. O'Rourke*, 891 F.3d 1338, 1341-42 (Fed. Cir. 2017) (observing that average time exceeds five years for a challenge to a decision of the Board of Veterans Appeals ("BVA")); *cf. Monk v. Wilkie*, 978 F.3d 1273, 1278 (Fed. Cir. 2020) ("When they appeal—whether they know it or not—[veterans] will enter into a process that takes years, sometimes decades, to complete, . . . jumping through hoops, absorbing dozens of letters, filling out confusing paperwork, and learning to live with waiting." (cleaned up)). This path is tedious, onerous, and one that rarely results in a precedential decision on which other veterans can rely. Indeed,

---

[10] If the issue is resolved at the Court of Appeals for Veterans Claims ("CAVC"), it will have taken about six to eight years based on average BVA wait times and a full briefing schedule in the CAVC. Wait times may lengthen due to the PACT Act.

the instant matter seeks to rectify a wrong committed against a population of individuals. An individual claim does not have the same force and effect.

In 38 U.S.C. § 502, Congress codified an alternative approach: judicial review in this Court of a VA decision denying a rulemaking petition. TAVA has elected to pursue this path. The potential availability of individual appeals to litigate as-applied challenges in no way divests this Court of its jurisdiction under Section 502. Nor is it a reason to condone the Secretary's prolonged delay in implementing a change that he, himself, has repeatedly endorsed as vital to the health and wellbeing of transgender veterans.

## IV. This Court should direct the Secretary to fulfill his statutory duty.

Any further stalling by the Secretary constitutes undue delay. VA ignored TAVA's petition for rulemaking for nearly eight years, then denied it after TAVA sought a writ of mandamus. *In re Transgender Am. Veterans Ass'n,* No. 2024-108 (Fed. Cir. filed Jan. 25, 2024). As TAVA argued in its mandamus petition, the multifactor test for agency delay established by the D.C. Circuit confirms that the Secretary's delay in acting on the petition was unreasonable. *See Telecomms. Rsch. & Action Ctr.,* 750 F.2d at 80 (D.C. Cir. 1984). The same is true of his failure to provide this necessary care. Section 1710 provides a clear statutory directive to furnish medical care that the Secretary deems "needed" by qualifying veterans, which includes gender-confirmation surgery—as he, for years, has acknowledged.

28

*See* Resp't's Br. 24; Appx329-333; Appx338. The VA's duty is clear here. By initiating rulemaking on gender-confirmation surgery, the agency can fulfill that duty and provide necessary, lifesaving care for transgender veterans. TAVA asks the Court to require VA to do so.

## CONCLUSION

For the foregoing reasons, TAVA respectfully requests that the Court hold VA's denial unlawful and reverse the agency's decision. In the alternative, TAVA requests that the Court vacate and remand the decision to VA to provide reasoned explanation or to initiate rulemaking proceedings.

October 22, 2024

Respectfully submitted,

/s/ Michael J. Wishnie
John Baisley, Law Student Intern
Natalie Geismar, Law Student Intern[**]
Romina Lilollari, Law Student Intern[**]
Michael J. Wishnie, Supervising Attorney
Veterans Legal Services Clinic
Jerome N. Frank Legal Services Organization
Yale Law School[*]
P.O. Box 209090
New Haven, CT 06520-9090
(203) 432-4800
michael.wishnie@ylsclinics.org

[*] This brief does not purport to state the views of Yale Law School, if any.
[**] Motion for law student appearance pending.

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 22nd day of October, 2024, I filed the foregoing Brief for Petitioners with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

/s/ Michael J. Wishnie
Michael J. Wishnie
Veterans Legal Services Clinic
Jerome N. Frank Legal Services Organization
Yale Law School
P.O. Box 209090
New Haven, CT 06520-9090
(203) 432-4800

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Circuit Rule 32(b).

1.     Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 6,975 words.

2.     The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Michael J. Wishnie
Michael J. Wishnie
Veterans Legal Services Clinic
Jerome N. Frank Legal Services Organization
Yale Law School
P.O. Box 209090
New Haven, CT 06520-9090
(203) 432-4800

October 22, 2024